AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3:19mj652
1454 RUSKIN ROAD, DAYTON, OHIO 45406 )
)
)

**FILED**
NOV -4 2019
Richard W. Nagel
Clerk of Court, Dayton OH

**APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession with intent to distribute controlled substances |
| 21 USC 843(b) | Use of a communication facility to commit a felony drug offense |
| 21 USC 846 | Conspiracy to possess with the intent to distribute controlled substances |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

SA CHARLES A. VILL, DEA
Printed name and title

Sworn to before me and signed in my presence via facetime.

Date: __11/04/2019__

_____
Judge's signature

City and state: DAYTON, OHIO      Hon. Sharon L. Ovington, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Charles A. Vill, a Special Agent (S/A) of the Drug Enforcement Administration, United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

## INTRODUCTION

1. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. Affiant has been employed as a Special Agent with the DEA since August 2016. In September 2016 Affiant attended the DEA Academy which consisted of 20 weeks of training in conducting federal drug trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. Affiant has been assigned to the DEA Dayton Resident Office since April 2017. Prior to employment with the DEA Affiant was a sworn Law Enforcement Officer of the State of Georgia who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Georgia, and employed by the Cobb County Police Department from December 2011 to August 2016. During Affiant's employment with the Cobb County Police Department Affiant was assigned to the Marietta-Cobb-Smyrna Organized Crime Task Force Intelligence Unit (MCS Intelligence). For approximately two years (2012-2014), Affiant was assigned to the Cobb County Police Precinct 3 Morning Watch. Affiant was then assigned to MCS Intelligence from April 2014 to August

1

2016. Affiant's duties included investigations of Violations of the Georgia Controlled Substances Act, Murder for Hire, Extortion, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

3. Since the time of Affiant's assignment with the DEA, and during time spent as a Cobb County Police Officer, Affiant has been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases. Through training and experience, Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

4. Along with other agents and task force officers of the DEA and other agencies, your Affiant is currently involved in an investigation into a Drug Trafficking Organization (DTO) regarding the distribution of narcotics, and conspiracy to do the same, in violation of 21 U.S.C. §§ 846, 841(a)(1) and the use of a communication facility to commit a felony drug offense in violation of 21 U.S.C. § 843(b). This Affidavit is submitted in support of an Application for a Search Warrant authorizing the search of the following premises, more particularly described in Attachment A, incorporated herein by reference, for the items described in Attachment B, incorporated herein by reference:

    a. **1454 Ruskin Road, Dayton, Ohio** (hereinafter referred to as the "**TARGET RESIDENCE**").

5. As outlined below, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (possession with the intent to distribute and to distribute controlled substances as well as conspiracy to do the same) and Section 843(b) (use of

2

a communication facility to commit a felony drug offense), are being committed, and that evidence, fruits, and instrumentalities of these violations, as well as contraband, as set forth more fully in Attachment B, is presently located in the **TARGET RESIDENCE**.

6. Affiant is familiar with the facts and circumstances described herein and makes this affidavit based upon personal knowledge derived from Affiant's participation in this investigation, conclusions Affiant has reached based on Affiant's training and experience, and upon information Affiant believes to be reliable from the following sources:

   a. Oral and written reports about this investigation and other investigations, which affiant has received from federal agents and agents from state and local law enforcement agencies;

   b. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to affiant either directly or indirectly;

   c. Information developed from cooperating sources;

   d. Public records;

The information contained in this Affidavit is either personally known by affiant or relayed to affiant by other law enforcement officers involved in this investigation. This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the requested search warrant.

## FACTS SUPPORTING PROBABLE CAUSE

7. Your Affiant submits, based on the facts below, that there is probable cause to believe that the **TARGET RESIDENCE**, as described above, is being used by a Dayton, Ohio based fentanyl trafficking organization to store and distribute illegal narcotics.

8. The DEA Dayton Resident Office is conducting an investigation into a Dayton,

3

Ohio based fentanyl trafficking organization. During this investigation, investigators cultivated a cooperating defendant (CD) who is providing information for consideration as to charges and possible sentence related to drug trafficking. CD stated that Nathan Goddard was the CD's drug source of supply. CD stated that he/she obtained approximately one pound of marijuana from Goddard on or about November 3, 2019. CD stated that this transaction occurred in the basement of 1454 Ruskin Road, Dayton, Ohio (**TARGET RESIDENCE**). CD stated that during this transaction CD observed approximately ten kilograms of drugs in the basement that Goddard purported to be fentanyl.

9. On or about November 4, 2019, investigators monitored and recorded a consensual telephone call between the CD and Goddard. Investigators observed as the CD dialed telephone number 704-497-3706. The CD stated this was the number utilized by Goddard. The telephone was placed on speaker phone so investigators could listen live.

10. During the telephone call, Goddard and the CD discussed the marijuana that CD received from Goddard. Goddard and the CD used the term "trees" to describe marijuana. Trees is a term commonly used by drug traffickers to describe marijuana based on my training, experience, and information provided by the CD. The CD then asked Goddard if he had the "fetty" still. Fetty is a term commonly utilized by drug traffickers to describe the drug fentanyl. Goddard immediately replied "Yea I showed you that!" meaning that Goddard had showed the CD the fentanyl the previous day when the CD was at the **TARGET RESIDENCE**. The CD then asked Goddard what the price of a "whole one" was. Whole one is a term commonly utilized by drug traffickers to describe kilogram quantities of drugs. Goddard replied "60 on them," meaning $60,000.00 per kilogram of fentanyl, which investigators know to be a common price per kilogram of fentanyl in the Dayton Ohio area. The CD and Goddard then agreed to

speak at a later time about setting up a transaction.

11. Investigators searched Ohio BMV and open source records for the **TARGET RESIDENCE** and learned that Shonda Bellaire and Lionel Combs Jr. had the **TARGET RESIDENCE** listed as their address. These persons are not known to investigators. Investigators showed CD a photograph of Combs and CD recognized Combs as being present in the **TARGET RESIDENCE** on November 3, 2019.

12. On November 4, 2019, investigators drove the CD to the **TARGET RESIDENCE** to confirm the address. Upon arrival, the CD recognized the **TARGET RESIDENCE** as the location he/she obtained the pound of marijuana from Goddard, and where the CD observed the ten kilograms.

13. Investigators then established surveillance of the **TARGET RESIDENCE** and observed a black Chevrolet Tahoe displaying Ohio license plate HMR1340, registered to Deangelo Goode. A criminal history check of Deangelo Goode showed Goode was arrested May 30, 2007 for trafficking in drugs by Dayton Police Department. The CD was shown a driver's license photo of Goode. Upon viewing the photo, the CD immediately recognized Goode as a male he/she called "D." The CD stated that Goode was a drug distributor in the Dayton Ohio area, and believed Goode was sourced by Goddard. Additionally, investigators observed a black Dodge Ram displaying Ohio license plate HHK3486, registered to John Senter. John Senter is known to investigators as a cocaine and marijuana trafficker in the Dayton, Ohio area. On July 14, 2006 Senter was sentenced to six years in prison for conspiracy to possess with intent to distribute more than five kilograms of cocaine and one hundred pounds of marijuana in the Southern District of Ohio.

14. Based on the information learned during the investigation, Affiant believes that

5

the **TARGET RESIDENCE** (1454 Ruskin Road, Dayton, Ohio) is being used by a fentanyl trafficking organization to store and distribute drugs.

15. Based on my training and experience, this residence is probably used to distribute narcotics. Based on my training, experience, participation in other drug investigations, my participation in this investigation, and my discussions with other experienced agents and officers of the Drug Enforcement Agency (DEA), and other federal state, and local law enforcement officers, your Affiant has learned:

   a. That narcotics traffickers, such as those who deal in distribution quantities of fentanyl frequently maintain at their residence, place of business or other secure premises to which they have access, amounts of fentanyl and amounts of currency in order to maintain and finance their ongoing narcotics business;

   b. That narcotics traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, including cocaine. Furthermore, your Affiant from experience that the aforementioned books, records, receipts, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

   c. That narcotics traffickers use and maintain electronic devices in furtherance of their illegal activities, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity.

   d. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence or place of business, for ready access and to conceal same from law enforcement authorities;

   e. That persons involved in drug trafficking conceal proceeds of drug sales, records of drug transactions, firearms, ammunition, cashes of drugs, large amounts of currency, financial instruments, keys to safe deposits boxes, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and/or evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from narcotics trafficking in their residences and in other secure locations including places of business in order to conceal them from law enforcement authorities;

    f. That narcotics traffickers commonly maintain records of telephone calls in billing statements, addresses or telephone numbers in books or papers which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

    g. That traffickers in controlled substances, namely cocaine, commonly keep paraphernalia for the packaging, weighing, processing, and distributing cocaine. That these paraphernalia include but are not limited to scales, plastic bags, baggies, heat sealers, and other utensils used to distribute cocaine;

    h. That your Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated, at least in part, by greed, in particular, trafficking in a controlled substance.

    i. That traffickers utilize vehicles to transport and conceal narcotics, and to conduct transactions inside of vehicles, out of the view of the public eye.

    j. That traffickers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

## CONCLUSION

25. Based on the information above, your Affiant submits that there is probable cause to believe that the specified federal offenses have been committed and that a search of the **TARGET RESIDENCE,** to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings and vehicles of any kind located in or on the **TARGET RESIDENCE** will lead to the discovery of the items outlined above (described more fully in Attachment B, incorporated by reference herein), which items constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1) (possession with the intent to distribute and to distribute controlled substances and conspiracy to do the same) and 21 U.S.C. 843(b) (use of telecommunication device to commit a felony drug offense).

26. Your Affiant therefore, respectfully requests that the attached warrant be issued authorizing the search of the **TARGET RESIDENCE,** to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings and vehicles of any kind located in or on the **TARGET RESIDENCE** as further described in Attachment A, relating to conspiracy to possess with the intent to distribute and to distribute controlled substances and use of a telecommunication device to commit a felony drug offense.

## REQUEST FOR SEALING

27. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Charles Vill, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on November 4, 2019.

_____
Honorable Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is:

a.   <u>1454 Ruskin Road, Dayton, Ohio</u> is a single family residence facing West toward Ruskin Road. The driveway for the residence runs along the left side of the residence. There is a concrete walkway from the driveway to the front door of the residence. The front door is on the far right side of the residence. The front side of the residence is brown brick with two windows and a chimney.



The property includes all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles of any kind located in the residence or on the property on which the residence is located.

## ATTACHMENT B

## PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) including, but not limited to:

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F. Cellular telephones, including all associated telephone records and stored electronic data that may be used in the commission of these offenses;

G. United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

H. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

I. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

J. Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

K. Firearms and ammunition.